# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff, : Case No. 3:08-po-64
        Also 3:10-cv-113

    -vs-     Magistrate Judge Michael R. Merz
:

RODNEY L. POWELL,

    Defendant.

**DECISION AND ORDER**

This petty offense case is before the Court on Defendant's Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 33). The Motion was filed one day before Defendant's release from imprisonment on the sentence in this case and thus satisfies the "custody" requirement for this Court to have subject matter jurisdiction. *Compare Maleng v. Cook*, 490 U.S. 488 (1989). Defendant's release does not render the Motion moot. *Carafas v. LaVallee*, 391 U.S. 234 (1968).

Defendant claims his trial attorney rendered ineffective assistance in violation of the Sixth Amendment. The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes

> both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).

Mr. Powell was convicted of driving under suspension. His defense was (and is) mistaken identification, to wit, that the person stopped by the Air Force Security Officer was not him.

Defendant asserts the following deficiencies in his trial attorney's performance:

1. She never questioned the officer about the lighting conditions where the traffic stop was made. (Argument appended to Motion, Doc. No. 33, at 6.)

2. She never questioned the officer "with respect to what happened to the driver's license (if they were suspended, the officer should have kept the license)." *Id.*

3. "[N]or was he asked as to why he did not detain the person driving the vehicle (which is

|   |   |
|---|---|
|   | normal procedure when a person is driving on suspended license)." *Id.* at 6-7. |
| 4. | "[C]ounsel never had a lineup conducted whereas [sic] the officer would have been required to make a positive identification under circumstances different from an in-the-courtroom identification process." *Id.* at 7. |
| 5. | "[F]ailed to object when the district judge [sic] made a preponderance of the evidence finding that it was not likely that two six-foot nine inch tall 220 pound Rodney L. Phillips's [sic], both of whom were born on June 9th, 1975, and both of whom resided at 1917 West Grand Avenue, Dayton, Ohio, apartment 4 exist." *Id.* at 9. |
| 6. | "[F]ailed to require the introduction of Mr. Powell's driver's license from DMV [sic] to establish that Powell's driver's license has his correct social security number associated with it." *Id.* |
| 7. | "[F]ailed to introduce Powell's social security card into evidence." *Id.* |
| 8. | "[F]ailed to have an independent handwriting analysis conducted. This would have shown, conclusively, that Mr. Powell was not the person who was subject to the traffic stop in issue." |

**Evidence at Trial**

This case was tried to the undersigned, sitting without a jury[1], on November 12, 2008. The Government's sole witness was Technical Sergeant Justin Tolley who testified that on December 21, 2007, he observed a red Grand Prix traveling west on Airway Road commit a marked lanes

---

[1]Defendant was charged with driving under suspension in violation of Ohio Rev. Code § 4510.11(A), assimilated into federal law by 18 U.S.C. § 13 because the offense occurred on Wright-Patterson Air Force Base, territory described in 18 U.S.C. § 7. The assimilated maximum penalty is six months confinement, making the crime a petty offense, for which Defendant was not entitled to trial by jury.

violation (Trial Transcript, Doc. No. 21, at 4.) Stopped and asked for identification, the driver presented an Ohio driver's license. *Id.* at 5. Sgt. Tolley made a query of the LEADS system and learned that the driver's license he had been presented, which had a picture which matched the driver, had been suspended. *Id.* He identified that person as Rodney Powell, the Defendant. *Id.* at 8.

Sgt. Tolley was recalled during the Defendant's case. He testified that any information on the ticket indicating the defendant's name and address would have come from the driver's license he was presented. *Id.* at 10-11. The vehicle description came from the vehicle registration. *Id.* at 11. The license tag number "would have come from the vehicle itself." *Id.* The Social Security number written on the ticket was 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. *Id.* Sgt. Tolley obtained that number either from the driver's license or from LEADS via the law enforcement desk at the 88th Security Squadron. *Id.*

Defendant then took the stand. He denied that he was the person who received the ticket which was introduced in evidence. *Id.* at 14. He claimed that at the time in question, 2:30 A.M., he was at work and riding with a co-worker, although he admitted that the records at his workplace did not show he was at work at that time. *Id.* He denied that the signature on the ticket was his. *Id.* He claimed he did not own a Pontiac Grand Prix. *Id.* He asserted that the Social Security number on the ticket was not his and that his own Social Security number is 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. *Id.* at 15. He asserted he had his Social Security case in his pocket as he was one the witness stand. *Id.*

On cross examination he admitted that the sex, height, weight, and hair color entered on the ticket correctly described him. *Id.* at 16. He also admitted that the address listed on the ticket – 1917 West Grand Avenue, apartment 4, was his correct address. *Id.*

In arguing the case, Ms. Bennett noted that the Bureau of Motor Vehicles records presented by the United States did not show that Defendant had a driver's license, but rather an Ohio

identification card.  *Id.* at 17.  However, the Court noted that the Violation Notice showed the source of data recorded on it was in fact an Ohio identification card.  *Id.* at 18.  The Court also found that it was "diminishingly unlikely" that there were two persons with the same name, meeting the same physical description, and living at the same address on the same date, particularly in light of the fact that Defendant conceded his work records, which he had intended to rely on for an alibi, did not substantiate his claim to have been elsewhere at the time.  *Id.* at 19.

Based on this evidence, the Magistrate Judge found the Defendant guilty.

## Analysis

Petitioner's claim is that each of Ms. Bennett's omissions in trying the case fell outside a "wide range of reasonable professional assistance" and that there is a reasonable probability that, had she tried the case as Mr. Powell argues she should have, the result would have been different.  Each alleged failure of performance will be examined in turn.

### Failure to Cross-Examine on Lighting Conditions

Ms. Bennett did not cross-examine Sgt. Tolley on the lighting conditions where the traffic stop was made.  Mr. Powell offers no evidence of what in fact the lighting conditions were at the time and place, although of course he claims he personally was not there.  There is no evidence before the Court to suggest that Sgt. Tolley's answer to the question would have been favorable to Mr. Powell's case.  There is also no evidence that Ms. Bennett knew what answer Sgt. Tolley would have given and it is the first rule of cross-examination not to ask a question unless you know what answer will be given.  Many famous examples exist of defense attorneys asking one such question

5

and destroying their entire case thereby.

Assuming hypothetically that Sgt. Tolley had testified that it was quite dark, would that have made a difference in the outcome? It seems unlikely that it would. The usual situation where lighting conditions make a difference is where the witness only had a fleeting opportunity to see a defendant, but here the encounter between Sgt. Tolley and Mr. Powell was extended and Sgt. Tolley made an effort to identify the person he was confronting through the LEADS system and asking to see identification.

The Court concludes that Ms. Bennett's failure to cross-examine about lighting conditions was well within the range of competent professional assistance and there is no proof that such cross-examination would have produced evidence favorable to the Defendant.

## Failure to Seize the Driver's License

Mr. Powell asserts Ms. Bennett performed incompetently by not asking Sgt. Tolley why he did not seize the driver's license of the person he stopped. The short answer is that the Violation Notice indicates Sgt. Tolley took the ticket information from the driver's Ohio Identification Card, not a driver's license.

Mr. Powell asserts that it is common police practice to seize a suspended driver's license under such circumstances. This assertion is not supported by any evidence; the Motion is not verified and there is no attached affidavit from Mr. Powell.[2] Even if this were true of Ohio police

---

[2]Although not a police officer, Mr. Powell might have been deemed competent to testify on this point had he offered to do so at trial. As the Court learned from the Presentence Investigation Report, Mr. Powell had been convicted on 21 prior occasions since 1994 of driving without a license or while under suspension. Of course, to have qualified himself as competent, he would have had to admit during trial that the prior arrests and convictions were the basis of his acquaintance with police practice.

officers in general, that would not show it to be true of Air Force Security Police, who are not law enforcement officers of the State of Ohio. In more than twenty-five years of trying traffic cases originating at Wright-Patterson Air Force Base, the Magistrate Judge cannot recall a single case where the license was seized because suspended. As the senior Assistant Federal Public Defender in Dayton, Ms. Bennett would have known such seizures are not standard practice for the Air Force Security Police.

The Court concludes that Ms. Bennett's failure to cross-examine Sgt. Tolley about his failure to seize a driver's license from the person he stopped was well within the range of competent professional assistance and there is no proof that such cross-examination would have produced evidence favorable to the Defendant.

**Failure to Arrest**

Mr. Powell faults Ms. Bennett's failure to cross-examine Sgt. Tolley about his failure to arrest and detain the persons he stopped, again asserting that would be standard police practice. Here again there is no evidence of what would be standard practice of the Air Force Security Police in such circumstances. In fact, arrests under such circumstances are very rare, again in the experience of the undersigned. No inference favorable to Mr. Powell would have been made from the failure of Sgt. Tolley to detain him and it was therefore no act of professional incompetence for Ms. Bennett to fail to ask the question.

**Failure to Conduct a Line-Up**

Mr. Powell contends Ms. Bennett should have, in the exercise of reasonable professional

competence, conducted a line-up and required Sgt. Tolley to identify him from that line-up.

It is certainly true that if there had been an in-court line-up of, say, six men meeting the same physical description that was on the Violation Notice and Sgt. Tolley had failed to pick Mr. Powell out of the line-up, that would have been helpful to his case; that would certainly have undermined any one-on-one in-court identification. It is also probably true that if Mr. Powell had been in the line-up and Sgt. Tolley had picked someone else, that the Court would have found Mr. Powell not guilty.

However, there is no law known to the Court which suggests that conducting such a line-up is required as part of a reasonably competent defense. In thirty-three years of trying criminal cases, the Court has never seen such a line-up conducted. In over forty years of studying the law, the Court has never heard of such a line-up being conducted or even recommended as a defense practice. The reasons are obvious: assuming defense counsel could find six people meeting the appropriate physical description, how could they be compelled to be present for such a line-up? And the risk of doing such an in-court line-up, presuming it could be arranged, is that the witness picks the defendant and thereby strongly reinforces any one-on-one in-court identification.

In any event, Mr. Powell has not shown that conducting such a line-up is part of ordinarily expected defense conduct. Nor has he shown that the results would have been favorable to his case.

**Failure to Object to Finding by a Preponderance**

Ms. Bennet failed to object when, in the course of explaining his grounds for finding Defendant guilty, the undersigned said it was "diminishingly unlikely" that there were two persons with the same name, meeting the same physical description, and living at the same address on the same date. Defendant asserts as grounds for the omitted objection that the finding was made by a

preponderance of the evidence. That simply is not so: the words "diminishingly unlikely" were intended to convey a finding beyond a reasonable doubt. And of course Mr. Powell has offered no evidence on the actual probabilities of such an occurrence which would undermine the finding. Had the objection been made at the time, the Court would certainly have overruled it and explained further the basis of its conclusion so that that could have been considered by Judge Rose on appeal.

### Failure to Introduce Driver's License from the State

Mr. Powell asserts Ms. Bennet should have obtained his driver's license from the State of Ohio because it would have shown his correct Social Security number. Again, this is pure conclusory assertion by Defendant: he has offered neither his driver's license nor a copy of his records from the Ohio Bureau of Motor Vehicles to prove what they would have shown had they been introduced in evidence. If he had a driver's license on his person at the time of trial which showed his correct Social Security number, why didn't he produce it then and there?

### Failure to Introduce Social Security Card

Mr. Powell complains that Ms. Bennett failed to introduce his Social Security card into evidence. What Ms. Bennett did was to ask him if he had his Social Security card on his person at trial and what number was on it. He was permitted to answer those questions without eliciting what would have been a perfectly acceptable best evidence objection from the Assistant United States Attorney. And the Court did not indicate that it disbelieved his testimony about what the card would show. A witness would be extremely foolhardy to claim on the witness stand that a document then in his possession showed a number which it did not show because he could be so easily impeached.

No fuss was made about the technical best evidence objection because the Court assumed that if the Government's attorney had any doubt on the matter, he would have asked to see the card (and may have done so prior to trial).

Nothing that was on the Social Security card Mr. Powell had on his person while he testified would have made any difference in the outcome because the Court believed his testimony about the contents without documentary proof.

**Failure to Conduct Independent Handwriting Analysis**

Mr. Powell asserts that Ms. Bennett should have had an independent handwriting analysis conducted and that this would have conclusively established that he was not the person stopped by Sgt. Tolley on December 17, 2007.

As shown above, the Government's case did not depend on any handwriting analysis. That is, the United States did not attempt to show that Mr. Powell had signed the ticket by introducing any evidence comparing that signature with a known sample of Mr. Powell's handwriting. No independent handwriting analysis was needed to impeach any such evidence offered by the United States. Instead, it would have been independent analysis undermining Sgt. Tolley's identification by other means[3].

Mr. Powell's claim of what an independent handwriting analysis would show is just that – a claim. He has offered no evidence to that effect and does not claim he has had such an analysis done. Nor has he cited any law to the effect that having such an analysis done is required by ordinary standards of professional competence in a petty offense case where the prosecutor is not

---

[3]Presumably Tolley watched the driver sign the ticket, although there is no testimony to that effect.

10

relying on handwriting analysis.

## Conclusion

With respect to all eight of his asserted instances of ineffective assistance of trial counsel, Mr. Powell has failed to show that Ms. Bennett's conduct falls outside the accepted range of professional conduct in defending cases such as this or that, if she had acted as he now asserts she should have, the result would probably have been different. The § 2255 Motion is denied with prejudice.

March 27, 2010.

                  s/ **Michael R. Merz**
                  United States Magistrate Judge